[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This lawsuit first came to this Court by writ, summons and complaint dated January 22, 1998 and returnable February 17, 1998, wherein the Plaintiff claimed a dissolution of marriage, alimony and alimony pendente lite, exclusive use of the marital residence, exclusive use of a certain motor vehicle, an allowance to prosecute, an equitable distribution of marital assets, counsel fees and such other relief as in law or equity may provide.
The Plaintiff was represented by counsel.
Certain automatic orders accompanied the complaint.
The Defendant appeared by counsel on February 20, 1998.
The Defendant filed an answer to the complaint and a cross complaint on February 20, 1998 in which cross complaint the Defendant claimed a dissolution of the marriage, alimony and an equitable division of the marital assets per Connecticut General Statute (C.G.S.) § 46b-81.
A financial affidavit was filed by the Defendant on February 27, 1998 incident to certain motions.
A stipulation between the parties as to finances was filed by the parties on April 6, 1998 and approved by the Court, Solomon, J.
An agreement of the parties was filed on May 29, 1998, which concerned itself with possession of the marital residence and CT Page 11595 finances.
The matter came on for hearing before the Court on September 18, 1998 and continued on September 22, 1998, on which dates the Plaintiff and Defendant were present with their respective counsel and witnesses.
Court makes the following findings of fact.
The Plaintiff, whose maiden name was Terese Gregory, and the Defendant were married in San Bernardino (Arrowhead Springs), California on December 5, 1987.
The parties had known each other from October 1985.
At the time of the marriage, the Plaintiff was employed by a medical HMO known as FHP.
The Defendant at the time of the marriage was employed by Cigna as a physician in the family practice realm.
The Plaintiff's education extended through high school and one year of junior college.
The Plaintiff has also participated in courses in interior design.
The Plaintiff's position at FHP was that of a floating receptionist, checking in patients.
Plaintiff was also employed for a time by Ethan Allen in sales.
After one year at FHP, the Plaintiff was advanced to a position called "front office charge".
It was during this time that the Plaintiff first met the Defendant.
Plaintiff's rate of compensation while at FHP was $8.00 hourly.
The Plaintiff and Defendant did not reside together prior to their marriage. CT Page 11596
Plaintiff's residence at the time of the marriage was in Anaheim, California.
Both the Plaintiff and Defendant had been married previously and the Plaintiff had two teenage children, Christa and Nathan, incident to her earlier marriage.
Plaintiff and Defendant were desirous of having a family, but this did not occur, the Plaintiff having a miscarriage in 1994.
The parties had been involved in a pre-adoptive foster child plan earlier but the matter was not completed.
Plaintiff receives certain funds from an organization known as Child Adoption Resource Association (CARA) incident to a child that resides with her.
Plaintiff was not employed at the time of the marriage due to stress disability.
After the marriage, the Defendant indicated that Plaintiff need not work outside the home.
The Plaintiff's life was more socially active than the Defendant's.
There were a few physical altercations over the years, the last one being in 1990.
The Plaintiff was hospitalized in 1988 and 1990 due to problems allied to stress.
After the marriage the Defendant changed jobs and at his new post earned $98,000.00 annually. The position, however, was brief.
The parties first separated in 1989 in California.
The Defendant became depressed, was without a position and left California after an altercation and came to New York.
The Defendant never returned to California to live, but tried to get the Plaintiff to move east.
The Defendant first came to Connecticut in 1989 incident to CT Page 11597 his being recruited by the Backus Hospital in Norwich.
The Plaintiff did finally come to Connecticut to meet Defendant's new employer and the parties resided at Motel 6 in Wethersfield for a number of weeks.
The Plaintiff's children by a prior marriage did not move east with her.
After coming to Connecticut, the Plaintiff assisted the Defendant in setting up a family practice located in Canterbury.
The Plaintiff decorated the office and assisted with some of the paperwork.
On leaving California, the Plaintiff had sold the home she had there, which was her separate property. The property was in Anaheim.
Plaintiff received approximately $100,000.00 from the sale.
With some of the proceeds, the Plaintiff purchased an automobile.
Plaintiff did work in the Defendant's office for some time doing clerical work, taking blood pressure, etc.
Plaintiff did not receive any separate compensation for these services.
After some time the Defendant hired a nurse and the Plaintiff was not allowed to visit the office.
The Plaintiff and Defendant separated a second time in 1991 at which time the parties had been living in a condominium at Central Village in Plainfield.
Plaintiff, on leaving Connecticut, then returned to California where she became employed by the Orange County Children's Hospital, front office, at $8.23 per hour.
After leaving that post, Plaintiff was employed by a medical office family practice group.
Plaintiff remained in California for three years, returning CT Page 11598 to Connecticut in 1994.
Gifts or communications which the Plaintiff sent to the Defendant during this three-year period were unanswered or returned.
After returning to Connecticut in 1994, Plaintiff became pregnant but sustained a miscarriage.
In February of 1995, the Plaintiff returned to California on the occasion of her stepfather's illness and remained there until he passed away.
Plaintiff subsequently returned to Connecticut in April 1995.
In the interim, the Defendant had canceled all of the Plaintiff's credit cards so that the Plaintiff had to resort to her mother and brother for financial assistance.
After Plaintiff's return to Connecticut in 1995, a residence at 39 Wales Road was acquired, title was taken in the Defendant's name only.
The Plaintiff made a deposit of $1,000.00 on the Wales Road premises and helped in its decoration. It was a large residence, six bedrooms and three baths.
The social life of the parties was very limited, usually out-of-town movies and dining out rarely.
It is the Plaintiff's intention to return to California to live where she hopes to begin a business enterprise in the handcraft field.
The Plaintiff is 47 years old, has back problems relating to a herniated disc, which was operated on in May 1998.
Plaintiff has recently undergone an MRI, represents her right leg and foot are numb and at an earlier point in her life had Crohn's disease.
Plaintiff sustained a shoulder injury some time ago, which she claims results in some shoulder disability. Plaintiff represents she is on the following regimen of medication. CT Page 11599
Senthroid
Estrotest
Zolof for depression
Hydration
Kadar — potassium supplement
Trasadone — for sleeping
Darvocet — for back pain.
Since August 26, 1998, the Plaintiff has received $500.00 weekly from the Defendant.
The Plaintiff offered testimony through the witness Laura Hessline of CARA and Dr. Kathleen McKnight relative to proposed adoption proceeding, which information is privileged.
The Plaintiff does currently receive $630.43 monthly from the organization known as CARA.
The Defendant is age 47 and was raised in New York City.
Defendant's education is as follows:
a Bachelor's Degree at the University of Pennsylvania and in 1976 graduated from medical school, Howard University
a residency at Glen Cove Hospital.
Defendant engages in a general family practice. Defendant does not engage in surgery.
The Defendant was divorced from his first wife in 1984, at which time he went through bankruptcy.
Defendant has been employed in the past by Family Health Plan and Cigna and the Mullican Medical Center in Artesia, California.
The Defendant claims the Plaintiff ordered him out of the home in 1989 in California and threatened him with bodily harm. CT Page 11600
Eventually, the Defendant in a relationship with Backus Hospital established a practice in Canterbury.
There were numerous problems in the relationship, Plaintiff and Defendant, where the Plaintiff would verbally berate the Defendant causing him embarrassment, some times in public.
The Defendant, aside from his personal medical practice, is medical director at the Center for Optimum Care in Ledyard.
The Defendant owes a debt to the Robinson's, the sellers of the Wales Road property, of approximately $19,000.00. The debt presumably being unsecured on the land records.
From the exhibits and financial affidavits.
The Defendant's weekly gross income is $1,923.00, net $1,007.00.
The Defendant owes John and Margaret Robinson, sellers of 39 Wales Road, $19,500.00 and a personal loan of $5,000.00.
Defendant values the Wales Road property at $280,000.00 with a mortgage of $210,000.00.
Defendant owns a 1991 Toyota motor vehicle valued at $2,880.00.
The Plaintiff is unemployed.
Plaintiff represents she is in debt to the amount of $28,697.72.
Plaintiff is not the owner of any real estate at present, according to her financial affidavit, and owns a 1990 Ford motor vehicle valued at $5,400.00
 Discussion
This is a marriage of almost 11 years duration.
This is the second marriage for both.
There are no children issue of this marriage. CT Page 11601
Both parties are well educated. The Plaintiff's education extending through one year in college and the Defendant is a practicing physician specializing in a family practice.
The separations have been frequent and of long duration.
The differences between the parties appear irreconcilable.
The Defendant's ability to set up a practice in Canterbury and purchase the Wales Road property were due in large measure to financial help and assistance rendered by the Backus Hospital.
There was only one minor instance of physical violence occurring years ago in California at a time both parties were under considerable stress.
The Plaintiff does possess marketable skills and has the capacity to secure profitable employment.
 The Law
The Court has considered all relevant sections of the C.G.S. including 46b-81, and 46b-82, the testimony of the parties, their witnesses, relevant case law and all exhibits.
The Court enters the following orders.
The Defendant shall pay the sum of $325.00 per week to the Plaintiff as alimony for a period of three years.
The alimony may be deductible to the Defendant and taxable to the Plaintiff.
The alimony payment is nonmodifiable as to the amount and duration.
The alimony will terminate in the event of the Plaintiff's death, remarriage or cohabitation within the meaning of C.G.S. § 46b-86b, if those events occur within the three years.
The Defendant shall pay the Plaintiff the sum of $5,000.00 in recognition of her contributions, in setting up the practice the deposit money and decorative work done at the Wales Road property. The payment to be made within 90 days. CT Page 11602
The Plaintiff is not liable on the mortgage deed and note to the mortgagee bank according to the testimony and exhibits and the real estate was only lately acquired with assistance of Backus Hospital. The Defendant may retain his interest in the 39 Wales Road property which is in his name alone.
The Plaintiff may have one-half of the funds in the parties' checking and savings accounts at People's Bank, to wit, one-half of $1,755.00 and one-half of $2,992.00.
The Plaintiff may have and receive one-half of the Defendant's IRA, to wit one-half of $5,627.00.
Inasmuch as no evidence was offered at trial as to the value of the Defendant's medical practice, the Court enters no order incident thereto.
The Defendant shall provide medical coverage for the Plaintiff through Cobra at his expense for 36 months.
The Defendant shall pay the Plaintiff the sum of $1,500.00 as relocation expenses incident to her return to California within 30 days.
The Plaintiff shall be entitled to retrieve or secure those items of furniture, furnishings, clothing, personal effects or antiques shown on the following schedule.
However, there shall remain in the Wales Road property sufficient furnishings to allow the continued occupancy by the Defendant.
In the event of disagreement, the matter may be the subject of arbitration.
1. Big Screen TV
2. 25" TV
3. Sofas (1)
4. Dining Room Table
5. Dining Room Chairs (6) CT Page 11603
6. Dining Room Hutch
7. Kitchen Table
8. Kitchen Chairs (4)
9. Bar Stools (2)
10. Stereo
11. Living Room Chair
12. Rocker Chairs (1)
13. Master Bedroom Set (bed, dresser, armoire)
14. Crib
15. Credenza
16. Chime Clock
17. End Table (2)
18. Coffee Table
19. Antique Chest
20. Antique Chair
21. Microwave
22. Rocking Chair
23. VCR
24. Swivel TV Stand
25. Standing Lamp
26. TV Trays (8)
27. Briana's Bedroom Set, clothing, etc.
28. Dishes, Kitchen items CT Page 11604
29. Pictures
30. Rugs
The Defendant shall pay the sum of $2,500.00 to the Plaintiff as counsel fees within 90 days.
The Defendant shall be responsible for paying the debt to John and Margaret Robinson in the amount of $19,500.00 and the $5,000.00 personal loan shown on his affidavit.
The Defendant shall contribute and pay the sum of $5,000.00 within four months to the Plaintiff to assist her in the liquidation of her credit card debt.
The Plaintiff shall be responsible for the debts shown on her affidavit mindful of the above-noted contribution.
The Plaintiff may retain title to her 1990 Ford Taurus motor vehicle. The Defendant may retain title to his 1991 Toyota motor vehicle.
There being no request made to the Court as to resumption of prior or maiden name, the Court enters no order incident thereto.
The marriage is dissolved on the grounds of irretrievable breakdown (C.G.S. § 46b-40c).
Austin, JTR